[886 NYS2d 731]

In the Matter of JAMES JOSEPH QUAIL, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, September 29, 2009

---

**APPEARANCES OF COUNSEL**

*Rita E. Adler,* Hauppauge (*Mitchell T. Borkowsky* of counsel), for petitioner.

*Long, Tuminello, Besso, Seligman & Werner, LLP,* Bay Shore (*David H. Besso* and *Michelle Aulivola* of counsel), for respondent.

**OPINION OF THE COURT**

Per Curiam.

The respondent was admitted to the bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on January 12, 2000.

The Grievance Committee for the Tenth Judicial District (hereinafter the Grievance Committee) served the respondent with a verified petition containing 28 charges of professional misconduct. After a preliminary conference conducted by telephone and a subsequent hearing, Special Referee John P. Clarke sustained charges 1 through 26. Charges 27 and 28 were withdrawn. The Grievance Committee now moves to confirm the Special Referee's report as to all 26 charges which were sustained, and to impose such discipline as the Court deems just and proper. The respondent has cross-moved to disaffirm the report insofar as it sustained charges 14, 15, and 18 through 22, and to limit the discipline imposed, if any, so as not to preclude him from continuing with the practice of law.

Charges 1 to 5: Worthington Case

Charges 1 through 5 pertain to the respondent's representation of Natalie Worthington, a Suffolk County police officer, from January 2002 through February 2005, in a civil rights action entitled *Worthington v County of Suffolk,* in the United States District Court for the Eastern District of New York (hereinafter the *Worthington* case).

Charge 1 alleges that the respondent is guilty of conduct prejudicial to the administration of justice by ignoring or otherwise violating multiple federal court orders in the *Worthington* case, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).

On or about May 29, 2003, United States Magistrate Lindsay issued an order directing the parties to submit statements pursuant to Federal Rules of Civil Procedure rule 56.1 by no later than June 30, 2003, directing the parties to submit a joint pretrial order by July 14, 2003, and scheduling a final conference in the *Worthington* case for July 14, 2003. The respondent failed to submit the Federal Rules of Civil Procedure rule 56.1 counterstatement on behalf of the plaintiff by June 30, 2003, and failed to appear at the conference held on July 14, 2003. Multiple extensions of time were granted to him, which with he also failed to comply.

On or about December 16, 2003, Magistrate Lindsay issued an order granting the respondent one last opportunity to provide the defendants' counsel with a proposed pretrial order by December 26, 2003, and to submit a joint pretrial order by January 14, 2004.

On or about January 9, 2004, the defendants moved for summary judgment. On or about January 14, 2004, the respondent submitted a proposed pretrial order to the defendants' counsel, but failed to file a rule 56.1 counter-statement for the plaintiff or any opposition papers to the defendants' motion for summary judgment. On or about August 2, 2004, Judge Seybert granted the defendants' unopposed motion for summary judgment dismissing the complaint, except for one claim.

The *Worthington* case was reassigned to the Honorable Dora L. Irizarry, who, by order dated October 13, 2004, scheduled a telephone status conference for November 9, 2004. On or about November 9, 2004, neither the respondent nor opposing counsel appeared for the conference. On or about November 10, 2004, Judge Irizarry issued an order directing the parties to show cause, by filing an electronic affidavit, why sanctions should not be imposed, not later than seven days from the date of the November 10th order. On or about November 16, 2004, opposing counsel complied with November 10th order. On or about December 16, 2004, Judge Irizarry issued an order imposing a $500 sanction upon the respondent, along with a notice of impending dismissal.

Charge 2 alleges that the respondent is guilty of conduct which adversely reflects on his fitness to practice law by ignor-

ing or otherwise failing to comply with multiple court orders in the *Worthington* case, as set forth above in the factual specifications contained in charge 1, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge 3 alleges that the respondent is guilty of engaging in conduct adversely reflecting on his fitness as a lawyer by submitting an affidavit containing inaccurate facts, in response to Judge Irizarry's November 10th order, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]). On December 10, 2004, the respondent filed an affidavit containing facts taken verbatim from the affidavit previously submitted by his opposing counsel and which were inapplicable to the respondent.

Charge 4 alleges that the respondent is guilty of neglecting the *Worthington* case by failing to file a rule 56.1 counter-statement and papers in opposition to the defendants' motion for summary judgment, failing to appear on July 14, 2003 for a scheduled conference, and failing to comply with orders and deadlines imposed by the court, in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]).

Charge 5 alleges that the respondent is guilty of engaging in conduct which adversely reflects on his fitness to practice law by neglecting the *Worthington* case by failing to file a rule 56.1 counter-statement and papers in opposition to the defendants' motion for summary judgment, failing to appear on July 14, 2003 for a scheduled conference, and failing to comply with orders and deadlines imposed by the court, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charges 6 to 13: Escrow Violations

Charges 6 to 13 pertain to a complaint initiated by the Grievance Committee based on a dishonored check for insufficient funds and escrow improprieties which were discovered upon the examination of the respondent's bank statements and book-keeping records. From November 2000 to November 2002, the respondent practiced as a solo practitioner in East Islip. In connection with his solo practice, he maintained two bank accounts at Citibank: an IOLA account known as the Quail Escrow Account and an operating account known as the Quail Operating Account. In or about November 2002, the respondent formed a law practice under the partnership of Romano, Paszynsky & Quail, P.C. at the same office location in East Islip. The partner-

ship maintained two accounts at Fleet Bank: an IOLA escrow account known as the Partnership Escrow Account and an operating account known as the Partnership Operating Account.

Charge 6 alleges that the respondent is guilty of engaging in conduct that is prejudicial to the administration of justice by failing to properly respond to the legitimate demands of the Grievance Committee, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).

By letter dated December 1, 2003, sent by regular mail to the partnership's offices, the respondent was advised that the partnership was subject to a sua sponte complaint based upon a notice from the Lawyers' Fund for Client Protection regarding a dishonored check for insufficient funds. The respondent was asked to submit a written explanation within 20 days of receipt of the letter, together with relevant bank and bookkeeping records for the previous six months. The respondent was the sole partner responsible for managing and maintaining the partnership escrow account records. The respondent failed to submit the requested explanation and records within the time provided.

On or about January 7, 2004, upon telephone inquiry, the respondent faxed a letter, dated and purportedly previously faxed to the Grievance Committee on December 19, 2003, acknowledging receipt and promising to submit a response "as soon as practicable" but within "no more than an additional twenty (20) days." The respondent failed to submit a response either within 20 days from December 19, 2003 or January 7, 2004.

By letter dated January 21, 2004, sent regular mail, return receipt requested to the partnership's offices, the respondent was again requested to submit a response within seven days. Postal records indicate that the letter was received by the partnership on January 22, 2004. The respondent failed to submit a response within seven days.

By letters dated January 30, 2004, sent via first class mail to the partnership offices, in three separate envelopes, addressed individually to each partner, each partner was directed to submit a written answer to the complaint not later than February 10, 2004. On or about February 1, 2004, the respondent took possession of all three envelopes. The respondent failed to submit a response by February 10, 2004. Not until March 8, 2004 did the respondent respond, over 90 days from the initial request.

Charge 7 alleges that the respondent engaged in conduct which adversely reflects on his fitness to practice law by failing

to respond to the legitimate demands of the Grievance Committee, as set forth in factual specifications contained in charge 6, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge 8 alleges that the respondent engaged in conduct prejudicial to the administration of justice by failing to advise his partner, Salvatore Paszynsky, about the sua sponte complaint and investigation, and failing to deliver the envelope addressed to him, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]). On or about March 5, 2004, Paszynsky learned of the dishonored check and the complaint from Christopher Romano, Esq., and he requested and received copies from the Grievance Committee of the Committee's letters. On or about March 5, 2004, the respondent falsely stated to Paszynsky that he had already submitted a response to the complaint and the required records, when, in fact, he had not.

Charge 9 alleges that the respondent engaged in conduct which adversely reflects on his fitness to practice law based on the factual specifications set forth above in charge 8, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge 10 alleges that the respondent is guilty of failing to adhere to his bank and bookkeeping duties by failing to maintain the required records for the Quail Escrow Account and Quail Operating Account, in violation of Code of Professional Responsibility DR 9-102 (d) (1), (2), (8) and (9) (22 NYCRR 1200.46 [d] [1], [2], [8], [9]). Between January 1, 2003 and March 2004, the respondent continued using the aforementioned accounts, but failed to maintain records of all deposits and withdrawals from these accounts, specifying the date, source, and purpose of each deposit, withdrawal, or disbursement. Further, during the same period, he failed to maintain copies of all bank statements, canceled checks, and duplicate deposit slips for these accounts. Nor did he maintain a ledger book or similar record for these accounts. Finally, he failed to make accurate entries of all financial transactions affecting these accounts.

Charge 11 alleges that the respondent engaged in conduct which adversely reflects on his fitness to practice law based on the factual specifications set forth above in charge 10, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge 12 alleges that the respondent is guilty of failing to preserve client funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]). On or about March 7, 2003, the respondent was entrusted with funds in the amount of $68,750 in connection with a real estate transaction involving his client, Anthony Senft, and the Estate of Gallagher, which he deposited into the Quail Escrow Account. Between March 7, 2003 and May 23, 2003, when the respondent should have maintained at least $68,750 in the Quail Escrow Account, the balance in the account fell, from time to time, below $68,750.

Charge 13 alleges that the respondent is guilty of conduct which adversely reflects on his fitness to practice law based on the factual specifications set forth above in charge 12, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charges 14 to 26: Napoli Matters

Charges 14 to 26 pertain the respondent's representation of Vincent Napoli and Michael Napoli, who retained the respondent in or about April 2003 to assist them in securing the release of federal forfeiture liens encumbering their properties.

Charge 14 alleges that the respondent engaged in conduct prejudicial to the administration of justice by failing to provide Michael Napoli with a written retainer agreement which complied with 22 NYCRR part 1215, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]). On or about April 17, 2003, the respondent was retained by Michael Napoli to assist him in securing the release of a federal forfeiture lien encumbering his property located at 9 Ohio Avenue in Medford. The retainer agreement failed to: (1) adequately explain the scope of legal services to be provided, as required by 22 NYCRR 1215.1 (b) (1); (2) adequately explain the respondent's fees to be charged, expenses, and billing practices, as required by 22 NYCRR 1215.1 (b) (2); and (3) disclose, where applicable, that Michael Napoli may have the right to arbitrate any fee dispute, as required by 22 NYCRR 1215.1 (b) (2).

Charge 15 alleges that the respondent engaged in conduct which adversely reflects on his fitness to practice law based on the factual specifications set forth above in charge 14, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge 16 alleges that the respondent is guilty of breaching his fiduciary duty by failing to promptly pay or deliver funds

received on behalf of a client or third person to a third person who was entitled to receive such funds, as requested, in violation of Code of Professional Responsibility DR 9-102 (c) (4) (22 NYCRR 1200.46 [c] [4]). In or about September 2003, the respondent agreed to assist Josephine Napoli in collecting monthly rent checks of $1,250 from one of her tenants, Vogue Cleaners, deposit same into his escrow account, and remit escrow checks for the same amount to Antoinette Rizzo on Josephine Napoli's behalf. Between September 10, 2003 and November 10, 2003, the respondent received checks from Vogue Cleaners, deposited the same into his escrow account, and remitted escrow checks to Antoinette Rizzo. On November 17, 2003, the respondent received and deposited into the Quail Escrow Account a final check of $1,250 from Vogue Cleaners. Despite attempts by Josephine Napoli to communicate with the respondent regarding remittance of the final check, the respondent failed to remit the final check until on or about April 22, 2004, five months after he received the funds.

Charge 17 alleges that the respondent engaged in conduct which adversely reflects on his fitness to practice law based on the factual specifications set forth above in charge 16, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge 18 alleges that the respondent violated his duty as a fiduciary by withdrawing a disputed fee from escrow prior to the dispute being resolved, in violation of Code of Professional Responsibility DR 9-102 (b) (4) (22 NYCRR 1200.46 [b] [4]).

On or about April 21, 2003, the respondent was retained by Vincent Napoli in various legal matters, including the sale of certain real property in Center Moriches. From on or about April 21, 2003, and throughout his representation of Vincent Napoli, the respondent communicated almost exclusively with Michael Napoli, who was authorized to act on Vincent Napoli's behalf. On or about August 6, 2003, the respondent received a down payment check for the sum of $12,750 from the purchaser of the Center Moriches property, payable to the respondent's law partnership, and deposited the same into the Partnership Escrow Account.

On or about October 14, 2003, the respondent advised Michael Napoli that his bill for various services rendered to Vincent Napoli, to date, exceeded $20,000, and he intended to utilize the proceeds from the sale of the Center Moriches property to pay himself the outstanding bill. At the closing on October

22, 2003, the respondent received, on Vincent Napoli's behalf, a certified check in the sum of $38,000, payable to "James J. Quail, as Attorney," representing the balance of the sale proceeds due Vincent Napoli. The respondent deposited the check into the Quail Escrow Account.

The respondent advised Michael Napoli that his outstanding bill for services had increased to more than $25,000 because of alleged difficulties relating to the closing. Between October 14, 2003 and October 31, 2003, Michael Napoli apprised the respondent of his objection to the claimed fee of $20,000, the claimed increased fee of $25,000, and the respondent's intention to pay himself from the sale proceeds. On or about October 26, 2003, the respondent received a letter from Scott Leemon, Esq. on Vincent Napoli's behalf, revoking the power of attorney granted to the respondent by Vincent Napoli, and asking the respondent to contact Michael Napoli to discuss the escrow funds. On or about October 31, 2003, the respondent withdrew $25,000 of the escrow funds and deposited the same into the Partnership Escrow Account for his fees, prior to resolution of the disputed fee.

Charge 19 alleges that the respondent is guilty of misappropriating funds entrusted to him as a fiduciary by withdrawing a disputed fee from escrow without permission, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

Charge 20 alleges that the respondent engaged in conduct which adversely reflects on his fitness to practice law based on the factual specifications set forth above in charges 18 and 19, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge 21 alleges that the respondent is guilty of charging and collecting an excessive fee, in violation of Code of Professional Responsibility DR 2-106 (a) and (b) (22 NYCRR 1200.11 [a], [b]). The respondent charged Vincent Napoli a legal fee of more than $25,000 based upon a rate of $400 per hour for services rendered from April 21, 2003 to October 27, 2003. The respondent's rate of $400 and the amount charged were unreasonably excessive given, among other things, the respondent's limited experience, the nature of the legal matter for which he was retained, the services he purportedly performed, and the amount customarily charged in the locality for similar legal services.

Charge 22 alleges that the respondent engaged in conduct which adversely reflects on his fitness to practice law based on

the factual specifications set forth above in charge 21, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge 23 alleges that the respondent breached his fiduciary duty by failing to promptly deliver funds belonging to Vincent Napoli to Vincent Napoli's attorney, as requested by his attorney, Scott Leemon, in violation of Code of Professional Responsibility DR 9-102 (c) (4) (22 NYCRR 1200.46 [c] [4]). Following the respondent's withdrawal of the sum of $25,000 from the Quail Escrow Account, the respondent maintained the sum of $19,691.65 in escrow attributable to the sale of the Center Moriches property. Vincent Napoli was entitled to the entire sum of $19,691.65 (hereinafter the undisputed funds). By letter dated November 10, 2003 (redated November 14, 2003), Vincent Napoli directed the respondent to transfer all the undisputed funds to Robert S. Lusthaus, Vincent Napoli's accountant. By letter dated December 9, 2003, the respondent advised Vincent Napoli that he would not forward any funds to Lusthaus without a notarized letter authorizing a transfer, and that he would prefer sending the undisputed funds to Vincent Napoli's criminal attorney for safekeeping. By letter dated January 24, 2004, Scott Leemon, Esq., Vincent Napoli's criminal attorney, requested that the respondent wire the undisputed funds to his operating account and included a notarized letter from Vincent Napoli authorizing the transfer. The respondent failed to forward the undisputed funds to Leemon until November 2004, 11 months later.

Charge 24 alleges that the respondent engaged in conduct which adversely reflects on his fitness to practice law based on the factual specifications set forth above in charge 23, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge 25 alleges that the respondent engaged in conduct prejudicial to the administration of justice by failing to maintain a copy of the retainer agreement with Vincent Napoli for seven years, in violation of Code of Professional Responsibility DR 9-102 (d) (3) (22 NYCRR 1200.46 [d] [3]). The respondent claims to have entered into a retainer agreement with Vincent Napoli in 2003, but acknowledges that he failed to maintain a copy of such agreement.

Charge 26 alleges that the respondent engaged in conduct which adversely reflects on his fitness to practice law based on the factual specifications set forth above in charge 25, in viola-

tion of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

At the hearing, the Grievance Committee called three witnesses: Salvatore Paszynsky, the respondent's former law partner; Henry E. Rakowsky, chairperson of Nassau County Bar Association Conciliation Committee and an expert on fees; and Michael Napoli. The Grievance Committee submitted 120 exhibits. The respondent called four witnesses: himself; Miguel Delgado, the respondent's treating psychiatrist; Debra Peavey, the respondent's fiancée; and Thomas Koch, an individual employed by the respondent to manage the transitional homes he owns. The respondent submitted 11 exhibits. Both parties submitted posthearing memoranda. The respondent admitted for the most part the factual allegations in the petition, with some exceptions. His case was devoted largely to presenting evidence in mitigation.

The parties stipulated to several amendments to the pleadings at the start of the hearing. With respect to charge 1, the parties stipulated that the respondent's failure to appear at the conference scheduled on November 9, 2004 resulted from opposing counsel's failure to notify him of the conference. The parties agreed to delete from charges 4 and 5 the November 9, 2004 conference date as one of two conference dates on which the respondent failed to appear. Regarding charge 23, the parties agreed to delete the Quail Escrow Account as the source from which the respondent withdrew the disputed sum of $25,000. With respect to charge 12, the respondent admitted the factual allegations, but stipulated that there was no evidence that the respondent's failure to preserve certain escrow funds was intentional.

Based on the respondent's admissions and the evidence adduced at the hearing, we find that all 26 charges were properly sustained. Accordingly, the petitioner's motion to confirm the report of the Special Referee is granted, and the respondent's cross motion to disaffirm is denied.

In mitigation, the respondent called several witnesses who testified with regard to his mental condition during the years 2003 and 2004. The respondent claimed that the neglect of his professional responsibilities resulted from the debilitating physical, mental, and emotional stress he was then feeling caused by an undiagnosed bipolar disorder. Yet, according to these same witnesses, the respondent's impairment was not severe, and he functioned perfectly well as a lawyer during that period. In any

event, the respondent's decisions to charge an excessive fee and to withdraw legal fees in dispute were the product of deliberate action and cannot be excused by his claim of stress and anxiety.

Notwithstanding the respondent's remorse, the remedial actions taken with regard to his own mental health and bookkeeping practices, and his work with so-called "sober houses," the respondent's misconduct was serious and not isolated.

Under the totality of circumstances, the respondent is suspended from the practice of law for a period of five years.

PRUDENTI, P.J., MASTRO, RIVERA, SPOLZINO and FISHER, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted and the respondent's cross motion to disaffirm is denied; and it is further,

Ordered that pursuant to 22 NYCRR 691.3, the respondent, James Joseph Quail, is suspended from the practice of law for a period of five years, commencing October 29, 2009 and continuing until further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of five years upon furnishing satisfactory proof that during that period he (1) refrained from practicing or attempting to practice law; (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10); (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c); and (4) otherwise properly conducted himself; and it is further,

Ordered that the respondent, James Joseph Quail, shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until such further order of this Court, the respondent, James Joseph Quail, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.

Ordered that if the respondent, James Joseph Quail, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).